

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-15-00160-CV

---

### IN THE INTEREST OF C.C., M.C., L.O., AND H.P., CHILDREN

---

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2013-508,801, Honorable Bradley S. Underwood, Presiding

---

September 1, 2015

## OPINION

### Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Haley P. and Nick C. appeal from a final order terminating their parental rights to their four children. They assert three issues to justify reversal of the decree. The first two involve the admission of an investigative report while the third concerns the trial court's decision to receive the testimony of a previously undesignated expert witness. We affirm the order of termination.

*Admission of Investigative Report*

Regarding the admission of the investigative report, Nick and Haley proposed that ". . . the trial court erroneously allowed the entire investigative report into evidence

under the theory of optional completeness" and that ". . . the admission of the report resulted in harm . . . ." We overrule the issues.

The investigative report in question was drafted by an employee of the Texas Department of Family and Protective Services (the Department) who was assigned to investigate the case. Nick and Haley sought to admit only the report's first page. It contained information received by the Department, which information gave rise to the subsequent investigation. The data thought pertinent by Nick and Haley indicated that the children were not suffering from physical abuse. Once the page was admitted into evidence, the Department sought the admission of the entire document under the rule of optional completeness, Texas Rule of Evidence 107. Nick and Haley objected, contending that Rule 107 did not apply, the entire report was "littered with hearsay statements," its prejudice outweighed its probative value, the Department had not laid the proper predicate for its admission, and it was an inadmissible expert's report. The trial court overruled the objections and admitted the entire report.

Nick and Haley do not reiterate before us each ground mentioned to the trial court. Instead, they focus on hearsay and Rule 107. Regarding the former, however, we deem the ground insufficiently preserved. Other than mentioning the phrase "littered with hearsay," they did not inform the trial court of the particular instances of hearsay they deemed inadmissible. This is problematic since a blanket hearsay objection that does not identify which parts of the document contain the hearsay is insufficient to preserve error with respect to those parts. *L.M. & Y.Y. v. Dep't of Family and Protective Servs.*, No. 01-11-00137-CV, 2012 Tex. App. LEXIS 5683, at *12 (Tex. App.—Houston [1st Dist.] July 12, 2012, pet. denied) (mem. op.); *In the Interest of M.N.*, No. 11-10-

00129-CV, 2011 Tex. App. LEXIS 1924, at *3 (Tex. App.—Eastland March 17, 2011, no pet.) (mem. op.); *Flores v. City of Liberty*, 318 S.W.3d 551, 560 (Tex. App.—Beaumont 2010, no pet.). Nick and Haley do not contend before us that everything in the report constituted inadmissible hearsay. Instead, they cite specific excerpts from the report as examples of hearsay within the document. Yet, these excerpts were not brought to the attention of the trial court. Again, their objection below was general and non-specific. Given these circumstances, the blanket hearsay objection they uttered at trial was not enough to preserve their complaints with regard to the specific instances of purported hearsay mentioned to us.

As for Rule 107, it provides that "[i]f a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject . . . [and] may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent." Tex. R. Evid. 107. The rationale behind the rule serves to permit an opponent of the alleged incomplete writing to introduce the remainder of the writing to correct any false or misleading impressions left with the jury by the incomplete writing. *Walters v. State,* 247 S.W.3d 204, 217-18 (Tex. Crim. App. 2007); *Lomax v. State,* 16 S.W.3d 448, 450 (Tex. App.—Waco 2000, no pet.). It allows the admission of otherwise inadmissible evidence to fully and fairly explain a matter broached by the adverse party. *Walters v. State,* 247 S.W.3d at 217-18. Nevertheless, the omitted portion of the statement must be on the same subject and must be necessary to make the admitted portion fully understood. *Sauceda*

3

*v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004). Finally, we review the decision to admit or exclude the evidence under the standard of abused discretion. *Id.* at 120.

The first page of the report that Nick and Haley introduced into evidence pertained to the "intake" or a caller informing the Department about the circumstances of the children. In particular, they wanted the jury to see the portion of the page wherein there appeared statements that "[t]he children appear to be 'in good shape' and were observed 'bouncing around' and 'happy'" and that there were ". . . no concerns of abuse" and "[t]here is no known effect on [the] children at this time . . . ." According to Nick and Haley, the first page of the investigative report addressed whether the children were victims of physical abuse. Given that specific topic, they argued that the page was complete within itself and not misleading. Yet, when the Department employee who drafted the report and conducted the initial investigation was asked if the statements in the report "would . . . support that the children's physical condition was not affected," she answered "[n]o." According to her, the children looked hungry and dirty. Furthermore, aspects of the omitted report contained descriptions of the living conditions to which the children were subjected. According to the police who appeared on the scene, the residence had no water or electricity. Dog feces, dog urine, and trash (which included dirty diapers) covered the floor. Maggots crawled inside and outside the refrigerator. Rotten food was discovered in the kitchen. The children were dirty, unkempt, and dressed only in diapers, even though one was at least three years old.

Physical abuse comes in many forms, and we cannot fault a trial court for refusing to conclude that forcing children to live in squalor or otherwise unhealthy conditions falls outside its scope. So, the trial court could have reasonably deduced

4

that the first page of the report was rather misleading and an incomplete description of the circumstances to which the children were being subjected. Thus, some portions of the additional twenty-six pages were admissible to explain whether the children showed signs of physical abuse or some other adverse consequences when the Department first encountered them in 2013. This is true even though those portions of the report may have contained hearsay. *See Walters v. State*, *supra* (acknowledging that Rule 107 is an exception to the hearsay rule).

However, the report contained other information unrelated to potential abuse suffered by the children when the Department was first contacted. Included within this data were such things as the childhood and criminal histories of the parents as well as their mental health, a previous history of possible domestic violence between the parents, Haley's own previous experience as a foster child, the safety plans instituted by the Department, the results of subsequent inspections of the living quarters of the parents, possible placements for the children, and visitations with the children. Such was not necessary to correct misimpressions created by admission of the first page and should have been excluded. Consequently, the trial court erred in admitting the entire investigatory report without first redacting its irrelevant aspects. *See Whipple v. State*, 281 S.W.3d 482, 500 (Tex. App.—El Paso 2008, pet. ref'd) (finding the entire report of a doctor to be inadmissible when the part admitted by the defense related only to the moment of the shooting for which the defendant was on trial but the rest of the report contained the personal, financial, and mental health history of the defendant as well as all events that occurred on the day of the shooting).

That the trial court erred, though, does not *ipso facto* obligate us to reverse the judgment. Reversal depends upon our determination of whether the error was harmful, TEX. R. APP. P. 44.1(a), and harm exists, in instances involving the improper admission of evidence, if the error probably caused the rendition of an improper judgment. *State v. Cent. Expressway Sign Associates*, 302 S.W.3d 866, 870 (Tex. 2009); TEX. R. APP. P. 44.1(a)(1). In other words, a "successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted." *Tex. DOT v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). Erroneously admitted evidence is generally harmless when the same or similar evidence was admitted elsewhere and the appellant does not complain of it on appeal. *See State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 881 (Tex. 2008) (concluding that the error was harmless because the evidence "was cumulative of substantially similar evidence from another expert . . . whose testimony has not been challenged on appeal"); *accord Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008) (stating that the admission or exclusion of evidence is likely harmless if the evidence was cumulative of other evidence). Nor is it harmful when the "rest of the evidence was so one-sided that the error likely made no difference." *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d at 873. Finally, in reviewing the matter, we consider the entire record. *Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

The appellate record here is comprised of multiple volumes of testimony. In perusing those volumes, we found evidence substantially similar to that appearing in the investigative report. More importantly, neither Nick nor Haley complained to us about

6

that substantially similar evidence. Like the report, it too revealed 1) Haley having left Nick to enter a residence for battered women, 2) one of the children having reported to a therapist that her parents used to push each other and argue, 3) Haley having been a foster child herself, 4) some of Haley's experiences as a foster child, 5) the deplorable living conditions encountered at the home, 6) the relationship between the grandmother's dogs and the condition of the house, 7) the referral of at least one child to assessment for developmental delays, 8) Nick having spanked the children in the past and destroying a teddy bear because one of the children broke a video game, 9) the use by both parents of drugs, 10) Haley having moved from the home for two years, 11) Haley having left the children (which included a newborn) with Nick when she moved out, 12) Haley having been overwhelmed by the care of four young children upon her return to the family, 13) the first foster family having become upset because Nick and Haley did not stay in contact with them, and 14) the parents having been arrested for shoplifting when the Department was moving towards reunification of the family.

Admittedly, the Department directed the jury's attention to the investigative report during its closing argument. Yet, again, much of the information in the report regarding the last five years of the parents' lives was admitted through other sources including the testimony of both Nick and Haley. Under these circumstances, we cannot say that the jury's verdict or judgment turned on the admission of the investigative report.[1] Indeed,

---

[1] We do not ignore the allegation of Nick and Haley that their counsel spoke to jurors after the verdict, and various jurors indicated that they relied on the investigative report in reaching their verdict. Assuming *arguendo* that such conversations occurred, we find it problematic that the two appellants and their legal counsel invite us to implicitly breach Texas Rule of Civil Procedure 327(b) and Texas Rule of Evidence 606(b). Both prohibit a juror from testifying about his thought processes utilized and statements or matters occurring during deliberation. And, though there are exemptions to that prohibition, they do not apply here. *See* TEX. R. EVID. 606(b) (stating that a juror may testify whether any outside influence was

our review of the entire record led us to find overwhelming evidence outside the report that enabled the jury to conclude that both parents knowingly placed or knowingly allowed their children to remain in conditions and surroundings which endangered their physical or emotional well-being and engaged in conduct or knowingly placed their children with persons who engaged in conduct which endangered their physical or emotional well-being. There is little probability that non-cummulative, inadmissible evidence affected the outcome here.

*Testimony of Dr. Shawn Keel*

Nick and Haley also complain of the trial court's decision to permit the intervenors to call Dr. Shawn Keel to testify as an expert. This purportedly was error because the intervenors had not timely designated her as an expert. We overrule the issue.

In urging their argument, Nick and Haley rely on Texas Rule of Civil Procedure 195.2. The latter provides:

> Unless otherwise ordered by the court, a party must designate experts - that is, furnish information requested under Rule 194.2(f) - by the later of the following two dates: 30 days after the request is served, or - (a) with regard to all experts testifying for a party seeking affirmative relief, 90 days before the end of the discovery period; (b) with regard to all other experts, 60 days before the end of the discovery period.

TEX. R. CIV. P. 195.2. In turn, Rule 194.2(f) provides that a party may request the disclosure of the identity of testifying experts. TEX. R. CIV. P. 194.2(f) (stating that "[a] party may request disclosure of any or all of the following . . . for any testifying expert . .

---

improperly brought to bear upon any juror and to rebut a claim that the juror was not qualified to serve). If a juror cannot personally tell us of those matters he considered in reaching his verdict, we can hardly consider such evidence simply because it is an attorney attempting to proffer hearsay about what the juror said. So, in conducting our harm analysis, we forego the invitation to disregard the aforementioned rules of procedure and evidence by considering what a juror supposedly said.

. the expert's name, address, and telephone number . . . ."). Reading the two provisions together, we conclude that the obligation to disclose the identity of a testifying expert arises when the information was requested under Rule 194.2(f). Indeed, such an interpretation is mandated by inclusion of the phrase "that is, furnish information requested under Rule 194.2(f)" after the phrase "a party must designate experts." The former clarifies what was meant by the latter. So, what Rule 195.2 tells the reader is that X and Y are the default deadlines for providing the information requested under Rule 194.2(f), that information being the identity of testifying experts.

Here, Dr. Keel was called as an expert witness by the intervenors (that is, the foster parents to two of the children) even though the intervenors had not designated her as a testifying expert. Yet, the record reveals that no one had propounded any discovery requests upon the intervenors. Thus, a condition precedent to the application of Rule 195.2 never occurred. That is, no one requested that the intervenors disclose their testifying experts under Rule 194.2(f). Nor do we find of record an order obligating the parties to disclose their testifying experts by any date irrespective of whether another party sought their disclosure. So, the intervenors had no obligation to disclose Keel before trial, and the trial court did not err in permitting her to testify. *See In the Interest of C.D.*, 962 S.W.2d 145, 147 (Tex. App.—Fort Worth 1998, no pet.) (holding that because no discovery requests were sent to the ad litem for the children, there was no duty on the part of the ad litem to disclose the witnesses he would call).

Nick and Haley cite us to *G.T. Leach Builders LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502 (Tex. 2015) and argue that it imposed an obligation upon litigants to designate experts even though no one requested such a designation. *G.T.* involved the

9

question of whether a party had waived its right to arbitration by invoking the judicial process. In resolving that topic, the Supreme Court noted that G.T. had designated experts and responsible third parties in conformance with a deadline imposed via an agreed scheduling order. *Id.* at 514. It decided that the party agreeing to the scheduling order was insignificant because, according to the Court, the party would have otherwise been obligated to designate same via the "default deadline for expert designations when the court has not set one . . . ." *Id.* When read in context, the Supreme Court's allusion to "default deadlines" cannot reasonably be construed as imposing an obligation to designate experts when no one requested such a designation. Indeed, the court's use of the phrase comports with our interpretation of Rule 195.2. Unless a trial court has ordered a deadline, the deadline to furnish information requested under 194.2(f) defaults to the deadlines provided in 195.2.

Having overruled each issue before us, we affirm the order terminating the parental rights of Haley P. and Nick C.

Brian Quinn
Chief Justice