# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00658-CV

**A. B. and J. H., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 284,960-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final order, based on jury findings, terminating the parental rights of appellants A.B. and J.H. to their daughter, E.H. In a single issue on appeal, A.B. asserts that the evidence is legally and factually insufficient to support the jury's finding that she had committed at least one of the alleged statutory grounds for termination. In two issues on appeal, J.H. asserts that the evidence is legally and factually insufficient to support the jury's finding that termination of his parental rights was in the best interest of the child and that the district court abused its discretion in admitting certain evidence. We will affirm the termination order.

## BACKGROUND

At trial, the jury heard evidence tending to show that J.H., a registered sex offender who had pleaded guilty in 1999 to sexually assaulting his then-three-year-old daughter, had admitted in online conversations that he had recently engaged in sexual contact with his other daughter, E.H.,

for a period of "about six months" when E.H. was approximately seven years old.  Copies of the online conversations were admitted into evidence, and they contained graphic descriptions of sexual acts J.H. claimed to have committed on his daughter and that he wanted to do with other underage girls.  The jury also heard evidence tending to show that A.B., E.H.'s mother, had allowed her daughter to remain in J.H.'s care, despite knowing of J.H.'s status as a sex offender and even after discovering his online communication.  Additional evidence tended to show that (1) E.H. had made an outcry of sexual assault, identifying J.H. as the perpetrator; (2) E.H., while in her parents' care, had lived in a one-bedroom trailer that witnesses described as "horrible," "deplorable," and "putrid," with a "very foul odor" emanating from inside the trailer that had caused two police officers to "vomit" upon opening the front door; and (3) A.B. and J.H. had failed to complete court-ordered services that were necessary for them to obtain the return of E.H.  Based on this and other evidence, which we discuss in more detail below, the district court submitted to the jury, as alternative statutory grounds within broad-form termination issues, whether A.B. and J.H. had: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the child's physical or emotional well-being; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the child's physical or emotional well-being; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the child.[1]  In addition to these alternative statutory termination grounds, the broad-form termination question also submitted whether it was

---

[1]  *See* Tex. Fam. Code § 161.001(1)(D), (E), (O).

in the best interest of the child to terminate A.B.'s and J.H.'s parental rights.[2] The jury found that A.B.'s and J.H.'s parental rights to E.H. should be terminated, and the district court rendered judgment accordingly. This appeal followed.

## ANALYSIS

### Evidentiary sufficiency

In her sole issue on appeal, A.B. asserts that the evidence is legally and factually insufficient to support the jury's finding that she had committed the alleged statutory grounds for termination. J.H. similarly asserts in his first issue that the evidence is legally and factually insufficient to support the jury's finding that termination of his parental rights was in the best interest of the child.

As an initial matter, the Department contends that A.B. and J.H. failed to preserve these complaints. We agree. A complaint that the evidence is legally insufficient to support a jury finding must be preserved in the court below by filing: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial.[3] Additionally, a complaint that the evidence is factually insufficient to support a jury

---

[2] *See id*. § 161.001(2).

[3] *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992); *In re L.C.W.*, 411 S.W.3d 116, 126 (Tex. App.—El Paso 2013, no pet.); *In re D.J.J.*, 178 S.W.3d 424, 426-27 (Tex. App.—Fort Worth 2005, no pet.); *In re J.M.S.*, 43 S.W.3d 60, 62 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *see In re J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005).

3

finding must be preserved by first raising that complaint in a motion for new trial.[4] Here, the record reflects that while A.B. and L.H. both filed a motion for new trial, neither motion contained a point challenging the legal or factual sufficiency of the evidence supporting the jury's findings. Nor did the parents take any other action to preserve their sufficiency challenges. Accordingly, these complaints have been waived.[5]

However, even if the parents' sufficiency challenges had been preserved, we could not conclude on this record that they had merit. The evidence tended to show that A.B. had allowed E.H. to live with J.H., even though she knew that J.H. was a registered sex offender who had been convicted of sexually assaulting his three-year-old daughter, and even after discovering J.H.'s online conversations in which J.H. had admitted to engaging in sexual contact with E.H. over a period of six months; described in graphic detail acts he committed on E.H. and that he wanted to do to other underage girls; and also offered to allow other men to do similar things to E.H. This and other evidence is legally and factually sufficient to support the jury's finding that A.B. had either knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the child's physical or emotional well-being or had engaged in conduct or knowingly placed E.H. with persons who engaged in conduct that endangered E.H.'s physical or emotional well-being.[6]

---

[4] *See* Tex. R. Civ. P. 324(b)(2), (3); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003); *Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex. 1991); *O.L. v. Texas Dep't of Family & Protective Servs.*, 460 S.W.3d 640, 655 (Tex. App.—El Paso 2014, pet. denied).

[5] *See J.P.B.*, 180 S.W.3d at 574; *O.L.*, 460 S.W.3d at 655.

[6] *See In re A.B.*, 125 S.W.3d 769, 775 (Tex. App.—Texarkana 2003, pet. denied) ("It is beyond question that sexual abuse is conduct that endangers a child's physical or emotional

We would reach the same conclusion as to J.H.'s claim that the evidence is legally and factually insufficient to support the jury's best-interest finding. In addition to the evidence of J.H.'s statutorily offensive conduct, summarized above, J.H. testified that he had been unemployed since at least 2015 and was not currently looking for a job, had failed to pay any court-ordered child support during the case, and had not visited E.H. since the case began in May 2016. Additionally, the Department presented evidence that E.H. had significant behavioral issues that needed to be addressed before she could be placed in an adoptive home and that the Department had placed E.H. in a long-term therapeutic foster home to address those issues. According to both the child's guardian ad litem and the Department's conservatorship caseworker, E.H.'s current placement provided the child with safety and stability, and they described the foster home as "excellent" and the foster parents as "amazing." The ad litem also testified that E.H. had expressed a desire to continue living with her foster mother and that the foster mother had similarly indicated a willingness to continue caring for E.H. "as long as she's capable" to do so. This and other evidence is legally and factually sufficient to support the jury's finding that termination of J.H.'s parental rights was in the best interest of the child.[7]

---

well-being. Parental knowledge that an actual offense has occurred is not necessary; it is sufficient that the parent was aware of the potential for danger and disregarded that risk." (internal citations omitted)).

[7] *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (summarizing best-interest factors); *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, no pet.) ("The need for permanence is a compelling consideration in determining the child's present and future physical and emotional needs."); *see also In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) ("[T]he lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor; otherwise, determinations regarding best interest would regularly be subject to reversal on the sole ground that an adoptive family has yet to be located. Instead, the inquiry is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent's

5

We overrule A.B.'s sole issue and J.H.'s first issue.

**Admissibility**

In his second issue, J.H. asserts that the district court abused its discretion in admitting (1) evidence of J.H.'s 1999 deferred adjudication for the offense of aggravated sexual assault of a child; (2) a written statement purportedly made by J.H. during the police investigation of the 1999 offense; and (3) an affidavit requesting the removal of the child from the parents' care, prepared by Shelby Foster, the CPS investigator in this case. Specifically, J.H. contends that the deferred adjudication was inadmissible character evidence, the written statement was not properly authenticated, and the removal affidavit was inadmissible hearsay.

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion."[8] A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner "without reference to any guiding rules or principles."[9]

We first address the evidence of J.H.'s 1999 deferred adjudication for the offense of aggravated sexual assault of a child. J.H. asserts that the evidence violates Texas Rule of Evidence 404(b), which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in

---

rights would be in the child's best interest—even if the agency is unable to identify with precision the child's future home environment.").

[8] *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (citing *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001)).

[9] *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In re D.O.*, 338 S.W.3d 29, 37 (Tex. App.—Eastland 2011, no pet.); *Murray v. Texas Dep't of Family & Protective Servs.*, 294 S.W.3d 360, 367 (Tex. App.—Austin 2009, no pet.).

6

accordance with the character."[10]  However, Rule 404(b) further provides that the evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[11]

Initially, we observe that J.H. failed to preserve error on the admission of this evidence. Although counsel objected when the Department first asked J.H. if he had been placed on deferred adjudication for aggravated sexual assault in 1999, counsel did not obtain a running objection or subsequently object when the Department later offered into evidence the documents pertaining to that offense, including a copy of the indictment, the 1999 judgment placing J.H. on deferred adjudication, and the 2001 judgment adjudicating guilt. Instead, counsel stated that he had "no objection" when the district court admitted the exhibit into evidence. Accordingly, the error, if any, in admitting this evidence was ultimately waived.[12]

Moreover, even if error had been preserved, we could not conclude on this record that the district court abused its discretion in admitting the evidence. The Texas Family Code provides a list of factors that are to be considered in determining "whether the child's parents are willing and able to provide the child with a safe environment."[13]  One of those factors is "whether there is a

---

[10]  Tex. R. Evid. 404(b)(1).

[11]  Tex. R. Evid. 404(b)(2).

[12]  *See* Tex. R. App. P. 33.1(a); *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235-36 (Tex. 2007); *see also Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) ("The general rule is error in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection.").

[13]  Tex. Fam. Code § 263.307(b).

history of abusive or assaultive conduct by the child's family or others who have access to the child's home."[14] In addition, other factors that are relevant to the best-interest determination include the emotional and physical danger to the child now and in the future, the stability of the home or proposed placement, and the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one.[15] J.H.'s deferred adjudication for the offense of aggravated sexual assault of a child involved his other daughter, who was three years old at the time, and J.H. had pleaded guilty to committing that offense. It would not have been arbitrary or unreasonable for the district court to conclude that evidence tending to show that J.H. had sexually assaulted his older daughter was relevant to the determination of whether it was in the younger daughter's best interest for J.H.'s parental rights to be terminated and to admit the evidence for that non-character-conformity purpose.[16]

---

[14] *Id*. § 263.307(b)(7).

[15] *See Holley*, 544 S.W.2d at 371-72.

[16] *See In re V.V.*, 349 S.W.3d 548, 556 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (concluding that evidence of father's assault of child's mother was relevant to best-interest determination); *In re K.L.R.*, 162 S.W.3d 291, 305 (Tex. App.—Tyler 2005, no pet.) (observing that "evidence of [parent's] arrests is admissible for the purpose of determining what is in the child's best interest"); *In re J.T.G.*, 121 S.W.3d 117, 132-33 (Tex. App.—Fort Worth 2003, no pet.) (concluding that "evidence regarding [parent's] prior criminal behavior, convictions, and imprisonment" was "relevant and probative to whether [parent] engaged in a course of conduct that endangered" his child's well-being); *In re C.Q.T.M.*, 25 S.W.3d 730, 736 (Tex. App.—Waco 2000, pet. denied) (concluding that parent's prior bad acts were relevant "to the relationship he would have with [his child], his parenting abilities, and the stability of [his] home" and were thus admissible for that reason); *see also In re R.L.A.*, No. 12-12-00317-CV, 2013 Tex. App. LEXIS 2745, at *16 (Tex. App.—Tyler Mar. 15, 2013, no pet.) (mem. op.) (concluding that extraneous-offense evidence was relevant in determining children's best interest); *In re J.A.P.*, No. 06-08-00092-CV, 2009 Tex. App. LEXIS 2422, at *6-11 (Tex. App.—Texarkana Apr. 1, 2009, no pet.) (mem. op.) (concluding that evidence of parent's relationship with her oldest daughter was relevant to determination of whether it was in best interest of mother's other children that her parental rights be terminated). *Cf. In re*

We next address the admissibility of the written statement purportedly made by J.H. during the police investigation into the 1999 offense. The statement provided a detailed account of circumstances surrounding the alleged sexual assault and contained a signature that, according to the Department, belonged to J.H. However, when the Department showed the statement to J.H. during his testimony, J.H. professed that he did not recognize the document, that he "never made a voluntary statement," that he "never signed this document," and that the signature on the document was not his own. When the Department subsequently offered the statement into evidence, J.H. objected on the ground that it had not been properly authenticated.[17] The Department argued in response that the statement was self-authenticating because it was signed "in front of a notary."[18] The district court overruled the objection and admitted the evidence.

Even if the statement was not properly authenticated, "to obtain reversal of a judgment based on the admission of evidence, the appellant must show that the trial court committed error and that the error amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case."[19] "To

---

*M.R.*, 975 S.W.2d 51, 55 (Tex. App.—San Antonio 1998, pet. denied) (concluding that evidence tending to show that father had committed domestic violence against child's mother was admissible to establish whether it was in child's best interest for father to be named child's sole managing conservator).

[17] *See* Tex. R. Evid. 901.

[18] One of the ways in which a document can be self-authenticating is if it is "accompanied by a certificate of acknowledgment that is lawfully executed by a notary public or another officer who is authorized to take acknowledgments." *See* Tex. R. Evid. 902(8). The statement here was not accompanied by a certificate of acknowledgment.

[19] *Texas Dep't of Human Servs. v. White*, 817 S.W.2d 62, 63 (Tex. 1991); *see* Tex. R. App. P. 44.1(a); *State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *Taylor v.*

9

put it another way, a successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted."[20] "In making this determination, the court must review the entire record."[21] The erroneous exclusion or admission of evidence "is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment."[22] Here, prior to the written statement being admitted into evidence, J.H. testified, without objection, to engaging in some of the conduct described in the statement, including taking his three-year-old daughter to the bathroom, taking off his pants and exposing his sexual organ to her, and having her touch his sexual organ, in what he claimed was an attempt to determine if another man had previously assaulted her. Thus, portions of the written statement were cumulative of J.H.'s trial testimony. Although J.H. denied engaging in some of the other conduct described in the statement, we cannot conclude on this record that the judgment terminating J.H.'s parental rights turned on the portions of the statement that were not cumulative of J.H.'s testimony, particularly in light of the other evidence in the case that was properly admitted and supported the termination of J.H.'s parental rights, including the documentary

*Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 652 (Tex. App.—Austin 2005, pet. denied).

[20] *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995)); *see In re C.C.*, 476 S.W.3d 632, 637 (Tex. App.—Amarillo 2015, no pet.).

[21] *Central Expressway Sign Assocs.*, 302 S.W.3d at 870; *In re Z.M.*, 456 S.W.3d 677, 692 (Tex. App.—Texarkana 2015, no pet.).

[22] *Central Expressway Sign Assocs.*, 302 S.W.3d at 870 (citing *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008)); *Z.M.*, 456 S.W.3d at 692.

evidence showing that J.H. had pleaded guilty to sexually assaulting his older daughter and the copies of the online communication in which J.H. admitted to engaging in sexual contact with E.H.

Finally, we address the removal affidavit. The affidavit, which was prepared by Shelby Foster, the CPS investigator in the case, summarized the history of the Department's case against A.B. and J.H. prior to the child's removal from their home and included a description of the Department's allegations against the parents. J.H. lodged a hearsay objection to the affidavit,[23] but the district court overruled the objection. Even if the affidavit was erroneously admitted, we cannot conclude on this record that J.H. was harmed by its admission. Foster and other witnesses testified without objection to many of the events and circumstances summarized in the affidavit, and this testimony was more detailed than the summary provided in the affidavit. Moreover, having reviewed the entire record, we conclude that this is a case in which "the rest of the evidence was so one-sided that the error likely made no difference in the judgment."[24]

We overrule J.H.'s second issue.

## CONCLUSION

We affirm the district court's termination order.

_____
Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Bourland

---

[23] *See* Tex. R. Evid. 801.

[24] *See Z.M.*, 456 S.W.3d at 692.

11

Affirmed

Filed:   March 9, 2018