In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00018-CV**
_____

**JOSE OYOQUE, Appellant**

**V.**

**GARRETT HENNING, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-05-04855-CV**

**MEMORANDUM OPINION**

On May 1, 2014, Garrett Henning sued Jose Oyoque's brother, Roberto Eulloque, for an alleged violation of a setback provision contained in the deed restrictions for the Lake Chateau Woods subdivision in Montgomery County, Texas. Oyoque substituted into the lawsuit as a party on September 14, 2016, following the death of his brother. On June 23, 2016, Henning filed his first amended original petition seeking to enforce the restrictive covenants, declaratory relief, a permanent

1

mandatory injunction, monetary relief, and attorney's fees. The jury found in favor of Henning on the issue of encroachment, but also found Henning was not entitled to a permanent injunction, monetary damages, or attorney's fees.

Jose Oyoque appeals the trial court's judgment. Oyoque argues in five issues on appeal that (1) the trial court erred by denying Oyoque's plea to the jurisdiction and motion to dismiss for lack of jurisdiction, (2) the trial court erred by striking Oyoque's experts, (3) the trial court erred by denying Oyoque's motion to exclude Henning's witnesses and limit trial testimony, (4) the trial court erred by denying Oyoque's motion to disregard jury findings, and (5) the trial court erred by denying Oyoque's motion for judgment notwithstanding the verdict.

## I. Background

The property at issue is located on Glen Oaks Drive in the Lake Chateau Woods subdivision in Montgomery County, Texas. The original subdivision survey of the plat was conducted by Glezman Survey. Henning owns lot 15C, and Oyoque owns lot 13C.[1] Texas State Land Associates, Inc. filed the original deed restrictions in 1967. The 1967 deed restrictions provided "[n]o improvements shall be erected

---

[1] Jose Oyoque's brother, Roberto Eulloque, was the owner of lot 13C when Henning commenced suit; however, Eulloque passed away during the pendency of the litigation on April 13, 2015, and Oyoque substituted in as a party on September 14, 2016.

or constructed on any lot or tract in said Lake Chateau Woods subdivision nearer than . . . 5 feet to the side property lines. . . ." On April 23, 1994, a Petition to Create Restrictions was filed in Montgomery County for the "purpose of creation of restrictive covenants[.]" The 1994 restrictive covenants contained a similar provision which provides "[n]o building, structure or improvement shall be erected on any lot within . . . five feet of the side property line[.]" A municipal utility district (MUD) was granted an easement between the two properties, as allowed by the restrictive covenants burdening the lots at issue.

In preparation to begin construction of a home on lot 13C, Oyoque's brother retained Cassurvey to conduct a survey in late 2012, which showed the slab would be situated five feet from the property line, in compliance with the set back lines. Once the slab was poured, Henning complained that it encroached on the five foot setback line. Accordingly, Eulloque asked Cassurvey to conduct a second survey, and they determined the slab met the set back restriction of five feet from the property line. In May 2014, Henning filed suit against Eulloque alleging the construction of the slab violated the deed restrictions. In January 2015, Henning filed a motion to appoint a neutral surveyor. In July 2015, the trial court appointed Survtech Surveying as a neutral surveyor to survey Eulloque's lot and provide a report to the court. Steve Laughlin, an employee of Survtech, testified during the

trial. Survtech's survey conflicted with the surveys completed by Oyoque's first surveyor, Cassurvey. Henning asserted that Cassurvey was not legally qualified to render expert opinions and further disputed the accuracy of Cassurvey's survey. Oyoque also retained Barry Adkins of DaRam Engineers, Inc. to conduct another survey in July 2016. Oyoque represented to the trial court that he hired Adkins of DaRam to complete another survey, because of the conflicts in the prior surveys.

Prior to trial, Henning filed a motion to strike Oyoque's experts, which included surveyors Silvio Prieto, owner of Cassurvey, and Barry Adkins of DaRam Engineers, Inc., asserting, among other things, their designations were untimely pursuant to the trial court's discovery control order.[2] The trial court granted Henning's motion, and neither witness was allowed to testify. The trial court also struck one of Henning's experts prior to trial.[3] The only surveyor the trial court allowed to testify at trial was Steve Laughlin of Survtech, its court-appointed surveyor.

---

[2] On May 31, 2016, the trial court entered a discovery control plan and a trial preparation order, providing that Rule 190.3 applies to the case, and the discovery period concludes 45 days prior to trial, which was originally set for September 12, 2016.

[3] Henning does not complain of the trial court striking his expert witness on cross-appeal.

Adkins testified in an offer of proof at trial and indicated DaRam actually conducted two surveys in 2016, one in July and one in September. Adkins concluded the slab was five feet from the boundary line. In September, a neighbor called Adkins's office and claimed the monuments had been moved. At that point, Adkins went back out to the Oyoque property to see if the monuments had been moved, and determined that they had not been moved. Adkins recognized that Survtech's survey showed the slab violated the deed restrictions, he found his two surveys showed it did not. Further, Adkins was critical of the method Survtech used in conducting its survey, and he identified errors that affected the accuracy of Survtech's survey.

In his first amended original petition, Henning sought to enforce the restrictive covenants, and requested declaratory relief, a permanent injunction, monetary relief, and attorney's fees. On September 5, 2016, Oyoque filed his plea to the jurisdiction, asserting Henning did not have standing to enforce the deed restrictions because they were not intended to benefit him, an argument that the trial court denied.

At the conclusion of the trial, in answer to the jury charge submitted, the jury found (1) "the slab of Oyoque's home encroache[d] on the five foot set back line of his own property[;]" (2) "Oyoque [laid] the slab of his home with a good faith belief that the slab was not encroaching on the set back line on his property[;]" (3) "the encroachment, if any, [was] slight[;]" (4) "the cost of removing the encroachment,

5

if any, [was] great[;]" (5) "the encroachment, if any, [had] not diminished the economic value of [Henning's] property[;]" (6) Henning established that "[Eulloque] or [Oyoque] breached [a] covenant owed to Henning as a neighbor by pouring the slab to Eulloque's house from six to eight inches into the [MUD's] easement on Eulloque's property[;]" (7) Henning did not "establish that, as a neighbor, he [was] the proper person to enforce the [MUD's] easement rights[;]" (8) "[Henning] should [not] be permitted to enforce the breach . . . by requiring [Oyoque] to tear down or move his house[;]" (9) Oyoque should not be required to pay Henning for his attorney's fees in bringing the suit; and (10) Henning should not be required to pay Oyoque's attorney's fees. The trial court's judgment states,

> that on the claim of Breach of Restrictive Covenant, the Jury finds in favor of Plaintiff GARRETT HENNING and against Defendant JOSE OYOQUE; however, the Jury further finds that the encroachment of eight-tenths of a foot is slight and not substantial enough to require this Court to issue an injunction. Therefore, Plaintiff's request for injunctive relief is DENIED. It is, further,

> ORDERED that each party shall bear his own costs and attorneys [sic] fees.

> Oyoque appeals the trial court's judgment.

## II. Analysis

### A. Issue One: Denial of Plea to the Jurisdiction and Motion to Dismiss for Lack of Jurisdiction

"A party may contest a trial court's subject matter jurisdiction by filing a plea to the jurisdiction." *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex. 2007) (quoting *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999)). We review a trial court's order denying a plea to the jurisdiction *de novo*. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 929 (Tex. 2010); *Hoff v. Nueces Cty.*, 153 S.W.3d 45, 48 (Tex. 2004).

Oyoque challenged Henning's standing to enforce the restrictive covenants by filing a plea to the jurisdiction with the trial court, which was denied. The parties acknowledge the existence of the restrictive covenants applying to the Lake Chateau Woods subdivision in their pleadings. A restrictive covenant is ordinarily enforceable only by the contracting parties and those in direct privity of estate with them. *Wasson Interests, Ltd. v. Adams*, 405 S.W.3d 971, 973 (Tex. App.—Tyler 2013, no pet.); *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668 (Tex. App.—San Antonio 2008, no pet.). There is a well-established exception in Texas when a general plan or scheme is adopted by the owner of a tract for the development and improvement of a property that is divided into streets and lots, and where the general plan restricts the uses to which the lots may be put, a purchaser and his

assigns may enforce the covenant against any other purchaser. *Hooper v. Lottman*, 171 S.W. 270, 272 (Tex. Civ. App.—El Paso 1914, no writ); *see also Ski Masters*, 269 S.W.3d at 669. Said another way, "[a] property owner may subdivide his property into lots and sell the lots to separate grantees, imposing restrictions on the use of each lot or parcel pursuant to a general plan or scheme of development; each grantee may then enforce the restrictions against each other grantee." *Wasson Interests*, 405 S.W.3d at 974.

Oyoque asserts that because the seller "reserves to itself" an easement, the restrictions do not inure to the benefit of Henning. We disagree. The parties concede that there are restrictive covenants, and indeed, Oyoque references the 1967 restrictions to establish the intent of the parties. Oyoque, specifically points to Item No. 12 in the 1967 restrictive covenants while ignoring language in the same document that provides:

> [E]ach of the parties hereto being desirous to create and carry out a *uniform plan* for the improvement, development and sale of all of the lots in the [] subdivisions for the *use and benefit of the present and future owners* of the lots in said subdivisions do hereby adopt and establish the following restrictions, reservations, agreements, covenants and easements to apply uniformly to the use, occupancy and conveyance of all lots in said subdivision[.] (emphasis added).

The plain language indicates the restrictions inure to the benefit of future owners like Henning. *See Country Cmty. Timberlake Vill., L.P. v. HMW Special Util. Dist.*

8

*of Harris & Montgomery Counties*, 438 S.W.3d 661, 669 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (quoting *Lehmann v. Wallace*, 510 S.W.2d 675, 680 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.) ("The most common test of the existence of a general building or neighborhood scheme is an intent that the protection of the restrictive covenant inure to the benefit of the purchasers of the lots in the tract.").

Therefore, we overrule issue one.

## B. Issue Two: Striking Oyoque's Experts

In issue two, Oyoque complains that the trial court erred by striking his experts. A trial court's exclusion of an expert witness who has not been properly or timely designated can be overturned only upon a finding the trial court abused its discretion. *Mentis v. Bernard*, 870 S.W.2d 14, 16 (Tex. 1994); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 297–98 (Tex. 1986). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *E.I. DuPont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

In the present case, the record includes the hearing conducted by the trial court regarding the expert witnesses and an offer of proof Oyoque made as to the testimonies of Adkins and Prieto, which preserved the error for appeal. It is

9

undisputed Henning never sent Oyoque a request for disclosure or any other discovery requests, although Oyoque did send a request for disclosure to Henning. While the trial court entered a Docket Control Order (DCO), the DCO does not expressly provide for the designation of expert witnesses, except to say that the parties should designate all deposition excerpts that they intended to offer at trial. Both parties filed motions to strike the other party's experts. The only expert witness allowed to testify at trial was Steve Laughlin of Survtech, the surveyor the trial court appointed as the court's independent expert. The trial court concluded that any witness who had not been deposed or designated 45 days before trial pursuant to the discovery control plan would be excluded, and that consequently, the court was "going to sustain the objection to witnesses or depositions taken after September 2nd because you've had the discovery order[.]"

Oyoque argues he did not have an affirmative duty to designate experts because discovery requests had never been propounded to him. We agree.

While the trial court cited to the discovery control plan to explain its ruling, nothing in the docket control order required the parties to designate their experts. Therefore, Rule 195 governed the disclosure of experts. *See* Tex. R. Civ. P. 195. Texas Rule of Civil Procedure 195.2 provides "[u]nless otherwise ordered by the court, a party must designate experts—that is, *furnish information requested* under

10

Rule 194.2(f)—by the later of the following two dates: 30 days after the request is served, or . . . 60 days before the end of the discovery period." Tex. R. Civ. P. 195.2 (emphasis added). Moreover, the rules also provide "[a] party may request another party to designate and disclose information concerning testifying expert witnesses only through a request for disclosure under Rule 194 and through depositions and reports as permitted by this rule." *See* Tex. R. Civ. P. 195.1. The comments to Rule 194 indicate that "[d]isclosure is designed to afford parties basic discovery of specific categories of information, *not automatically in every case, but upon request*[.]" Tex. R. Civ. P. 194 cmt.1 (emphasis added). These rules do not impose a duty on a party not seeking affirmative relief to designate expert witnesses in the absence of a request. *See In Interest of C.C.*, 476 S.W.3d 632, 638–39 (Tex. App.— Amarillo 2015, no pet.) (concluding that "the obligation to disclose the identity of a testifying expert arises when the information was requested under Rule 194.2(f)"); *In Interest of C.D.*, 962 S.W.2d 145, 147 (Tex. App.—Fort Worth 1998, no pet.) ("Because there was no discovery request to the ad litem, who represented a *party* (the children), the ad litem had no duty to disclose the evidence he would use or witnesses he would call."). By ignoring the plain language of Rules 194 and 195, the trial court abused its discretion. *See Robinson*, 923 S.W.2d at 558; *Downer*, 701 S.W.2d at 241–42.

When a trial court commits an error, we will reverse on appeal only if the error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). The exclusion of evidence is reversible when the complaining party shows (1) the trial court committed error, and (2) the error probably caused the rendition of an improper judgment. *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992). "A person seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995).

Generally, to succeed on a claim that the trial court erred in admitting or excluding evidence, the complaining party is required "to show that the judgment turns on the particular evidence excluded or admitted." *Id.* at 753–54. We review the entire record to determine whether the case turns on the evidence that the trial court excluded. *Id.* at 754. "[I]f erroneously admitted or excluded evidence was crucial to a key issue, the error is likely harmful." *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009).

By striking Oyoque's expert witnesses, Oyoque had no way to rebut Steve Laughlin's testimony on the primary factual dispute regarding whether the slab on the lot in issue failed to comply with the five foot set back restriction that applied to

his deed. The error played a significant role in the jury's finding on issues one, two, and six. After reviewing the entire record, we find that Adkins's testimony would not have been cumulative of any of the other expert testimony. Because the trial court erred by excluding relevant and material testimony on three of the critical issues, and because no other expert testified in Oyoque's favor on several of the critical issues the jury decided in his case, we must grant Oyoque's request for another trial. *See* Tex. R. App. P. 44.1(a)(1).

We sustain issue two. We do not reach Oyoque's remaining issues as addressing them would afford him no greater relief. *See* Tex. R. App. P. 47.1.

### III.  Conclusion

Having concluded the trial court abused its discretion by striking Oyoque's experts when no request for disclosure had been propounded by Henning, and the error likely resulted in the rendition of an improper judgment, we reverse and remand for a new trial consistent with this opinion.

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on July 11, 2017
Opinion Delivered March 29, 2018

Before Kreger, Horton, and Johnson, JJ.

13