

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00163-CV
### No. 10-18-00164-CV

## IN THE INTEREST OF F.L., A CHILD
## IN THE INTEREST OF F.L., A CHILD

### From the 361st District Court
### Brazos County, Texas
### Trial Court No. 16-001641-CV-361
### Trial Court No. 17-002392-CV-361

## MEMORANDUM OPINION

Felipe L. and Monica H.[1] appeal from judgments that terminated the parent child-relationship between them and their children, F.L., III and F.L.[2] Felipe complains that the trial court abused its discretion by admitting written judgments from his criminal

---

[1] Pursuant to Rule 9.8 of the Texas Rules of Appellate Procedure, we use aliases to refer to the children and their parents. TEX. R. APP. P. 9.8(b)(2).

[2] F.L. was born during the pendency of the case involving F.L. III leading to separate cause numbers; however, both cases were tried together at the final hearing where parental rights were terminated as to both children.

convictions, violated his due process rights by allowing one witness to testify by telephone, and that the evidence was factually insufficient for the trial court to have found that termination was in the best interest of the children. Monica complains that the evidence was factually insufficient regarding the best interest finding. Because we find no reversible error, we affirm the judgments of the trial court.

**BEST INTEREST OF THE CHILDREN**

In Felipe's third issue and in Monica's sole issue, Felipe and Monica complain that the evidence was factually insufficient for the trial court to have found by clear and convincing evidence that it was in the best interest of the children for their parental rights to be terminated. Termination decisions must be supported by clear and convincing evidence. *See* TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

In determining whether the evidence is factually sufficient to support the termination of a parent-child relationship, we are required to perform "an exacting review of the entire record." *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). As relevant to this proceeding, we determine whether, on the entire record, a factfinder

could reasonably form a firm conviction or belief that termination of the parent-child relationship was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the child include the following: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive, and some listed factors may be inapplicable to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor

may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

F.L., III was born prematurely in 2016 and had respiratory and feeding problems. Monica admitted to using marijuana during her pregnancy. F.L., III spent two months in the hospital after birth. Monica had multiple instances of not feeding F.L., III properly while he was in the hospital. F.L., III was removed from Monica and placed with Monica's mother, Natalie, when he was discharged from the hospital pursuant to a safety plan. After approximately six months, F.L., III was placed back with Monica on a monitored return; however, F.L., III was hospitalized shortly after the return and had lost three pounds while in his mother's care, which was approximately 15 percent of his total body weight. F.L., III was hospitalized due to dehydration and lethargic behavior and had been throwing up for a week. Monica had not sought medical attention because she believed that seeking medical attention was to be used only as a last resort. It was eventually discovered that Monica had given him cough syrup, although she did not initially disclose that to F.L.,III's physicians. Monica had also violated the safety plan by leaving F.L.,III unattended with an individual the Department had specifically not approved. At that time, F.L., III was removed again and placed back with Natalie. F.L. was born approximately nine months after F.L., III was removed from Monica the second time and was immediately removed by the Department and placed with Natalie.

Monica and Felipe had been together on and off again for approximately three years beginning in 2015 and there were multiple allegations of domestic violence during that time. One incident occurred when Monica was pregnant with F.L., III. Other instances took place after the removal of the children. At trial, Monica and Felipe both denied that there were physical altercations between them even though witnesses testified that they had seen some of the incidents and the caseworkers and other providers testified that at various times Monica had told them that Felipe was violent.

Both parents were diagnosed with mental disorders that would make stable parenting highly unlikely according to the testifying mental health experts, which included their counselors and the doctor who performed the psychological evaluations on Felipe and Monica. Felipe and Monica were both diagnosed with antisocial personality disorder and Monica was further diagnosed as being bipolar. Monica refused to acknowledge that she had ever been diagnosed as having bipolar disorder and denied that she needed medication even though the experts testified that she had exhibited behaviors that could only be aided by medication. Monica did not attend therapy regularly and was discharged from two providers due to excessive absences. Felipe did not complete anger management even though his counselor believed it was needed. Neither parent completed individual therapy.

Felipe had multiple convictions for violent offenses including murder and robbery. Felipe had been hiding during part of the time of the case involving F.L.,III

because he had an active warrant for burglary pending. Monica denied knowledge of Felipe's whereabouts but got pregnant with F.L. during this time. Felipe claimed to have been present when Monica gave F.L.,III the cough syrup prior to F.L., III's hospitalization, which was also during the time Monica claimed not to know Felipe's whereabouts. Monica and Felipe were both dishonest with the Department and their service providers on multiple issues throughout the proceedings.

Visitation with the children was problematic because Monica and Felipe refused to follow instructions regarding how bottles were to be prepared and Monica caused a scene on at least one visit in front of the children and refused to feed with the provided bottle. Felipe's visitations were decreased due to his failure to regularly attend visits. Monica stopped visiting with the children for several months near the end of the case because she did not agree with the placement with her mother and stated that she would not have a relationship with them if they remained with her mother.

The children were very bonded to Natalie and she was seeking to adopt them. One of the children called her "Mama." Natalie was able and willing to continue to ensure that the children received the ongoing medical care that was needed for them. Both children were too young for them to express their desires. The Department believed that permanent placement and ultimate adoption by Natalie was in the children's best interest.

However, Monica believed that her mother was the source of her problems and that leaving the children with her permanently would be harmful. There was testimony that Natalie's husband had watched Monica shower when she was young because she did not have proper hygiene habits. Monica also testified that Natalie was responsible for the mental health issues Monica had when she was younger and that Natalie was attempting to do the same thing to the children by claiming that F.L., III was demonstrating anger issues as a young toddler.

Felipe and Monica had both completed parenting classes and Monica participated in additional parenting classes that were not required and the providers testified on their behalf that their participation was very good and that no signs of violent behavior were observed.

Notably, neither Felipe nor Monica challenge the legal or factual sufficiency of the evidence regarding the predicate acts that served as the basis for the termination. Felipe was terminated pursuant to Sections 161.001(b)(1)(D) (endangering surroundings), (E) (endangering conduct), and (O) (failure to complete service plan). Monica's parental rights were terminated pursuant to Sections 161.001(b)(D), (E), and (O), and also pursuant to Section 161.003 (mental illness or deficiency). By failing to challenge these grounds, the parties have conceded that there was clear and convincing evidence of these acts, and evidence regarding predicate acts is relevant to determining the best interest of the children. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

The attorney ad litems for both children argued against termination, and Felipe and Monica presented testimony that their rights should not be terminated. Both agreed that they had significant verbal altercations but each denied any physical violence between them had ever occurred. Felipe and Monica testified that they were no longer together in a relationship; however, there was evidence that they were still very close and spending time together. Felipe was not seeking the return of the children to him but asked the trial court to return the children to Monica. Monica was asking for the return of the children or for the children to be placed somewhere other than with Natalie.

In termination cases "[w]hen there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (*citing City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005)). Using the *Holley* factors, and giving due deference to the trial court's fact findings, we find that the evidence was factually sufficient for the trial court to reasonably form a firm conviction or belief that termination of the parent-child relationship was in the best interest of the children. We overrule Felipe's third issue and Monica's sole issue.

**PRIOR CRIMINAL CONVICTIONS**

In his first issue, Felipe complains that the trial court erred by admitting evidence of his prior convictions in the form of the written judgments because he contends that they were not properly connected to him and the misdemeanor convictions were not admissible. During the trial, the State offered the judgments into evidence in one batch

and Felipe objected on the basis that the judgments should be offered separately so that Felipe could admit or deny each one individually and then the State would be required to prove them up in some other way. The trial court sustained the objection and required the State to question Felipe about each judgment individually. The State then questioned Felipe individually and the judgments were admitted with the exception of one which was never admitted. Felipe did not object to the admission of the exhibits except for the one that was not admitted again. To preserve a complaint for appellate review, an appellant must show (1) he made the complaint to the trial court by a timely request, objection, or motion, and (2) the trial court ruled on the request or refused to rule on the request and appellant objected to the refusal. *See* TEX. R. APP. P. 33.1(a). No running objection was requested and no objection to the exhibits was made individually at the time of their admission. Therefore, Felipe has not preserved his complaint for appeal. We overrule Felipe's first issue.

**RIGHT TO CONFRONTATION**

In his second issue, Felipe complains that his due process rights were violated because he was denied the right to confront and cross-examine a witness who was allowed to testify by telephone. The witness, who lived in Austin, was a woman who was the named victim in some of Felipe's prior criminal convictions relating to domestic violence in 1994. She testified that she was fearful of retaliation by Felipe if she personally appeared to testify against him. The witness testified that in November of 1994, Felipe

had broken the screen of her front door and kicked the door in. She did not know if Felipe was convicted of that offense. She also testified that Felipe had been convicted of assault for slapping her two weeks prior to the incident in November of 1994.

Felipe was able to cross-examine the witness; however, he contends that without being able to observe the witness's demeanor personally, the cross-examination was ineffective. Felipe also argues that without her physical presence, it was impossible for her to identify Felipe as the perpetrator.

Even if we assume that the trial court erred by allowing the witness to testify by telephone, and we expressly do not make such a holding, we cannot conclude that its admission probably caused the rendition of an improper termination judgment against Felipe. *See* TEX. R. APP. P. 44.1(a). To determine harm under rule 44.1(a), we must review the entire record, "considering the 'state of the evidence, the strength and weakness of the case, and the verdict.'" *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008) (internal citations omitted). In other words, a "successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence . . . admitted." *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).

Felipe argues that the testimony, relating to domestic violence allegations from 1994, was harmful because it was the only direct evidence of actual physical violence committed by Felipe. We disagree. The judgments of conviction for criminal mischief

and assault with bodily injury relating to the offenses to which the witness testified were admitted without objection by Felipe. We further note that Felipe did not challenge the sufficiency of the evidence to support the trial court's findings under Subsection 161.001(b)(1)(D) or (E) which would have related to sufficiency of the evidence of the allegations of domestic violence. By failing to challenge the sufficiency of the evidence relating to these grounds, Felipe in essence concedes on appeal that the evidence supports those findings, preventing a conclusion that the testimony probably led to an erroneous Section 161.001(b)(1) finding pursuant to Subsections (D) or (E). Similarly, we cannot conclude that the admission of the testimony probably caused the trial court to err by finding that termination of Felipe's parental rights was in the children's best interest. We have detailed the sufficient evidence supporting this finding, all of which was separate and apart from the witness's testimony regarding events long in the past. Further, the witness's testimony comprised only a scant portion of a lengthy trial record and was not inflammatory or particularly detailed. Therefore, the error, if any, likely made no difference to the trial court's best-interest determination as to Felipe and was harmless. *See In re C.C.*, 476 S.W.3d 632, 638 (Tex. App.—Amarillo 2015, no pet.); *In re D.O.*, 338 S.W.3d 29, 37-38 (Tex. App.—Eastland 2011, no pet.). We overrule Felipe's second issue.

**CONCLUSION**

Having found no reversible error, we affirm the judgments of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed on August 15, 2018
[CV06]

