

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00185-CV

_____

IN THE INTEREST OF M.M. AND E.L., CHILDREN

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 17-7206-367

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

After a bench trial, the trial court terminated Mother's[1] parental rights to M.M. (Ann) and E.L. (Beth). Mother asserts three issues: (1) the trial court erred by considering Mother's testimony about violating certain court orders because there were no such orders; (2) the evidence is legally and factually insufficient to support the five grounds of termination; and (3) the evidence is legally and factually insufficient to support the trial court's best-interest finding. We hold that (1) the trial court did not err by considering Mother's testimony, (2) the evidence is legally and factually sufficient to support grounds under Subsection 161.001(b)(1)(E) of the Texas Family Code and thus that addressing the remaining grounds is not necessary, and (3) the evidence is legally and factually sufficient to support the trial court's best-interest finding under Subsection 161.001(b)(2). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E), (b)(2). We affirm the trial court's judgment.

## I. PROCEDURAL BACKGROUND

In August 2017, the Texas Department of Family and Protective Services filed a petition to terminate Mother's and Father's parental rights to Ann. In August 2018, Maternal Aunt, the person with whom the Department had placed Ann, filed an intervention petition seeking her appointment as Ann's sole managing conservator.

---

[1]We use aliases to identify the children, and we identify family members by their relation to the children. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

This suit ended on January 9, 2019, with an agreed order involving Mother, Father, Paternal Grandparents, and Maternal Aunt. Maternal Aunt became Ann's nonparent permanent managing conservator, while Mother and Father became her possessory conservators.

While Ann's suit was pending, in May 2018, the Department filed a separate petition to terminate Mother's and the alleged father's parental rights to Beth.[2] This suit ended in May 2019 with the parental rights of Beth's alleged father being terminated and, in an agreed order, with Maternal Aunt being appointed as Beth's nonparent permanent managing conservator and Mother being appointed as Beth's possessory conservator.

Thereafter, in March 2020, the trial court consolidated Ann's and Beth's suits under Ann's cause number.

A few months later, in November 2020, Maternal Aunt filed a petition to terminate Mother's parental rights to both Ann and Beth. After a bench trial in March 2021, the trial court terminated Mother's parental rights to both Ann and Beth. Specifically, the trial court found grounds under Subsections 161.001(b)(1)(C), (D), (E), (F), and (P) and best interest under Subsection 161.002(b)(2). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(C), (D), (E), (F), (P), (b)(2).

---

[2]The petition initially alleged two men as potentially being Beth's father, one of which was Ann's father, but the Department later nonsuited him, leaving only one alleged father for Beth. Beth's alleged father is not pertinent to the remainder of the opinion. All references to Father are to Ann's father.

3

## II. DISPUTED EVIDENCE

In Mother's first issue, she argues that "the Court improperly considered that [Mother] violated court orders, and yet no such injunctions against [Mother] were ever ordered by the Court; accordingly, the evidence is legally insufficient to justify the Court's order terminating [Mother's] parental rights and [the trial court's reliance on such evidence] amounts to a violation of Due Process under the Texas Constitution." At trial, Mother admitted violating the trial court's orders by allowing Father and Paternal Grandparents to have contact with the children. On appeal, Mother argues that there was no order prohibiting her from engaging in such conduct and that the trial court's reliance on Mother's mistaken trial testimony erroneously skewed the factual analysis against her. Mother's first appellate issue thus seems to contradict her own testimony. To put Mother's trial testimony and her appellate issue in context requires some explanation.

### A. THE JANUARY 2019 AGREED ORDER

According to the January 2019 agreed order involving Ann,

- Father was not to have any access or possession until at least 90 days after he was released from prison and, even then, only if he produced two drug-free tests 90 days apart; and

- Paternal Grandparents were to have access "on days and times as agreed by [Maternal Aunt] and [Paternal Grandparents]." Additionally, Paternal Grandparents were required to "provide notice to [Maternal Aunt] of intent to exercise access at least seven (7) days in advance."

4

Thus, although the trial court did not enjoin Mother from giving Father or Paternal Grandparents access to Ann, the agreed order forbade Father from having access to Ann while he was in prison, and it contemplated Paternal Grandparents having access to Ann only with Maternal Aunt's agreement and after having given Maternal Aunt advance notice.

With that understanding of the court order, Mother's testimony showed that she allowed (1) Father to speak with Ann over the telephone while he was in prison and (2) Paternal Grandparents to see Ann without Maternal Aunt's knowledge. Mother appeared to acknowledge knowing that Father was not supposed to have access to Ann but denied knowing that Paternal Grandparents were not supposed to have access to Ann without Maternal Aunt's agreement until after Mother had already facilitated visits between Paternal Grandparents and Ann—or as Mother stated it, "until after the fact." Technically, Mother was not violating the January 2019 agreed order, but she was facilitating Father and Paternal Grandparents to violate it.

On recross examination, Mother's attorney prompted Mother to provide testimony minimizing the extent to which she allowed Father to have contact with Ann. Specifically, Mother testified that she limited Father's telephone contact with Ann to two instances—once in December 2020 and once in June or August 2020.

Maternal Aunt, when testifying, also addressed Mother's part in helping Father and Paternal Grandparents violate the agreed order. Mother's inability to follow court

5

orders concerned Maternal Aunt and caused Maternal Aunt to question whether Mother had acted in the children's best interest.

## B. DISCUSSION

Mother's argument that the trial court erred by considering admitted evidence does not comport with any objection at trial. Neither Mother nor her counsel argued at trial that her conduct did not violate the agreed order; just the opposite, the substance of Mother's testimony was that she participated in helping Father's and Paternal Grandparents' violations of the agreed order, and our review of the agreed order shows that Mother had correctly concluded that she had done just that. There was no trial objection on this basis because there was no basis to raise this objection. The complaint on appeal must comport with the objection at trial. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997); *In re C.P.V.Y.*, 315 S.W.3d 260, 269 (Tex. App.—Beaumont 2010, no pet.); *In re W.J.H.*, 111 S.W.3d 707, 713–14 (Tex. App.—Fort Worth 2003, pet. denied), *superseded by statute on other grounds as recognized by In re D.A.R.*, 201 S.W.3d 229, 230–31 (Tex. App.—Fort Worth 2006, no pet.).

The trial court did not err by considering the disputed testimony. We overrule Mother's first issue.[3]

_____

[3]We do not understand Mother's complaint to attack the admission of her testimony about helping Father's and Paternal Grandparents' violations of the court orders, but to the extent that is her argument, the error, if any, was harmless because the same testimony came in on other occasions without any objection. Erroneously admitted evidence is generally harmless when the same or similar evidence was

6

## III.  LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

### A.  GENERALLY

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)).

Termination decisions must be supported by clear and convincing evidence. *See* Tex. Fam. Code Ann. §§ 161.001(b), 161.206(a); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012).  Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397).  Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

---

admitted elsewhere.  *See Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008); *In re C.C.*, 476 S.W.3d 632, 637 (Tex. App.—Amarillo 2015, no pet.).

For a trial court to terminate a parent–child relationship, the party seeking termination must establish, by clear and convincing evidence, that (1) the parent's actions satisfy just one of the many predicate grounds that are listed in Subsection 161.001(b)(1) of the Texas Family Code and (2) termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b)(1), (2); *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

Regarding the Subsection 161.001(b)(1) grounds, the supreme court articulated an important qualification: if the trial court finds grounds under Subsection (b)(1)(D) or (E)—both of which involve endangering a child's physical or emotional well-being—an appellate court must review either the (D) or (E) grounds on appeal (or both if neither withstands appellate review) because they have potential collateral consequences for other children the parent may have. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(M) (providing that a prior termination under (D) or (E) is a ground for terminating parental rights to a different child); *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("[I]f a court of appeals affirms the termination on either [(D) or (E)] grounds, it must provide the details of its analysis."); *In re D.D.E.*, No. 11-21-00069-CV, 2021 WL 4598596, at *2–3 (Tex. App.—Eastland Oct. 7, 2021, no pet. h.) (mem. op.); *In re A.B.-G.*, No. 02-19-00066-CV, 2019 WL 3755770, at *7 n.5 (Tex. App.—Fort Worth Aug. 8, 2019, pet. denied) (mem. op.); *A.C. v. Tex. Dep't of Fam. & Protective Servs.*, 577 S.W.3d 689, 698–99 & n.2 (Tex. App.—Austin 2019, pet. denied). Termination may not be based solely on the child's best interest as determined by the

factfinder under Section 161.001(b)(2). *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re C.D.E.*, 391 S.W.3d 287, 295 (Tex. App.—Fort Worth 2012, no pet.).

## B. LEGAL SUFFICIENCY

In evaluating the evidence for legal sufficiency in parental-rights-termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the Department proved both the particular ground for termination and that termination was in the child's best interest. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment, and we resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *J.F.C.*, 96 S.W.3d at 266. We also must disregard all evidence contrary to the finding that a reasonable factfinder could have disbelieved, in addition to considering undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.* In doing our job, we cannot weigh witness-credibility issues that depend on the witness's appearance and demeanor; that is the factfinder's province. *J.P.B.*, 180 S.W.3d at 573. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.*

## C. FACTUAL SUFFICIENCY

We must perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support terminating a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). In a factual-sufficiency review, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction that the parent violated an alleged ground and that termination was in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *see In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## D. GROUNDS UNDER SUBSECTION (E)

The trial court found grounds under Subsections 161.001(b)(1)(C), (D), (E), (F), and (P). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(C), (D), (E), (F), (P). We address grounds under Subsection (E) first.

### 1. Law

"Endanger" means to expose to loss or injury, or to jeopardize a child's emotional or physical health. *Boyd*, 727 S.W.2d at 533; *In re J.T.G.*, 121 S.W.3d 117,

125 (Tex. App.—Fort Worth 2003, no pet.). The parent's conduct does not need to be directed at the child nor must the child suffer actual injury in order to be endangered within the statute's meaning. *J.T.G.*, 121 S.W.3d at 125. Moreover, a child can be endangered simply by violence that is directed toward another child in the home. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

Under Subsection (E), we ask whether evidence exists that the parent's conduct—including acts, omissions, or failures to act—endangered the child's physical or emotional well-being. *J.T.G.*, 121 S.W.3d at 125. Additionally, Subsection (E) requires not just a single act or omission but rather a voluntary, deliberate, and conscious course of conduct. *Id.*

## 2. Discussion

### a. Evidence

Mother admitted being placed on probation in April 2016 for driving while intoxicated and being ordered to submit to drug testing. She pleaded true to failing a drug test in March 2017.

Two months later, in May 2017, Ann tested positive for cocaine, and Mother acknowledged telling a Department investigator that she had used methamphetamine and cocaine with Father. In July 2017, Mother tested positive for methamphetamine and was ordered to participate in and went through an outpatient substance-abuse drug treatment program. But in August 2017, Mother again tested positive for methamphetamine and was again ordered to participate in a drug treatment program.

11

Although Mother completed the course, she continued to abuse drugs. That same month, the Department filed its first petition to terminate Mother's parental rights to Ann.

Ann's case went on for 18 months, during which time neither Ann nor Beth was returned to Mother. Mother stated that Ann was 14 months old when she was placed with Maternal Aunt and that, even before Ann was 14 months old, Maternal Aunt had cared for Ann off and on as part of Mother's family-based services plan. In contrast, Maternal Aunt stated that Ann had been in her care since before May 2017[4] and that Beth had been in her care since birth because Maternal Aunt had picked up Beth at the hospital. After Beth's birth in 2018, Mother continued to abuse drugs. As noted earlier, Ann's case ended with the January 2019 agreed order in which Mother was given possessory conservatorship and Beth's case ended in May 2019 with the same result.

Thereafter, in September 2020, Mother tested positive for methamphetamine. And in November 2020, Maternal Aunt filed a petition to terminate Mother's parental rights to both Ann and Beth.

_____

[4]The Department filed its original termination petition in August 2017, when Ann was approximately 14 months old. The affidavit supporting the Department's original August 2017 termination petition provided that Ann tested positive for cocaine in May 2017 and thereafter resided with Maternal Aunt. Thus, Maternal Aunt had cared for Ann since Ann was about 10 months old.

At trial, Mother admitted being a drug addict. On the other hand, Mother had evidence showing that she had tested clean on seven of the eight tests administered between January 2019 and March 2021, when trial began.[5]

And financially, Mother estimated that since November 2017, she had paid close to $3,000 in child support. And since January 2019, she estimated that she had paid over $8,000 on visit supervisors and close to $1,500 on drug tests.

### b. Application

The Department filed its original petition to terminate in August 2017 after Mother had tested positive for methamphetamine. In September 2020, nearly three years later, Mother again tested positive for methamphetamine. Since 2017, Mother showed a pattern of relapsing and acknowledged being a drug addict.

Narcotics and their effect on a person's ability to parent may qualify as an endangering course of conduct. *J.O.A.*, 283 S.W.3d at 345. Further, evidence that a parent continued to use illegal drugs even though the parent knew that his or her parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct that, by its nature, endangers a child's well-being. *See In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied); *Cervantes-Peterson v. Tex. Dep't of Fam. & Protective Servs.*, 221 S.W.3d 244, 253-54 (Tex.

---

[5]Mother tested clean on May 6 and August 10, 2019; January 6, May 7, June 19, and November 23, 2020; and February 23, 2021. The only test that she tested positive on was September 14, 2020.

App.—Houston [1st Dist.] 2006, no pet.) (en banc). Because using narcotics exposes the child to the possibility that the parent may be impaired or imprisoned, their use may support termination under Subsection (E). *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617-18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Although a parent's imprisonment is insufficient, standing alone, to constitute "engaging in conduct which endangers the emotional or physical well-being of the child," imprisonment is nevertheless a factor to consider on the endangerment issue. *See Boyd*, 727 S.W.2d at 533–34; *In re M.D.S.*, 1 S.W.3d 190, 199 (Tex. App.—Amarillo 1999, no pet.). This is so because evidence showing a course of conduct that routinely subjects a child to the probability of an absent parent endangers both the physical and emotional well-being of a child. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). Once a parent's drug usage becomes entangled in criminal proceedings, the parent risks being absent if (1) the parent continues to violate probationary conditions, (2) the parent has committed a new offense growing out of a continued use of illegal drugs, or (3) the parent is once again committed to a rehabilitation program. *Id.*; *see In re R.S.*, No. 12-21-00029-CV, 2021 WL 2816403, at *4 (Tex. App.—Tyler June 30, 2021, no pet.) (mem. op.).

Our focus is not on whether Mother had made progress, because the evidence suggests that after the January and May 2019 agreed orders, Mother had made progress. Rather, our focus is on whether she continued to use illegal drugs, and the

14

evidence was that she had. During the initial suits, Mother used illegal drugs even though she knew that her parental rights were in jeopardy, and after the January and May 2019 agreed orders, she used again. Throughout her children's lives, she showed a voluntary, deliberate, and conscious course of conduct that, by its nature, endangered her children's well-being. *See M.E.-M.N.*, 342 S.W.3d at 263. Narcotics can impair or incapacitate the user's ability to parent. *See J.O.A.*, 283 S.W.3d at 345. Methamphetamine addiction can work havoc not only on the addict but on the addict's family, and small children, such as Ann and Beth, are particularly vulnerable. The danger here is more than "metaphysical," and more is at stake than a less-than-ideal family environment. *See In re D.R.*, No. 06-21-00019-CV, 2021 WL 3411562, at *3 (Tex. App.—Texarkana Aug. 5, 2021, no pet.) ("Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury.") (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)). Since Ann's removal in 2017 and Beth's removal in 2018, Mother's ability to directly threaten her children has been limited because her visits were supervised, but her ability to indirectly harm her children has not been limited. *See J.O.A.*, 283 S.W.3d at 345 ("[E]ndangering conduct is not limited to actions directed towards the child."). *But see In re L.C.L.*, 599 S.W.3d 79, 85 (Tex. App.—Houston [14th Dist.] 2020) (en banc) ("Somewhere along the way, our court conflated drug use with child

15

endangerment such that mere drug use alone became conclusive evidence that a child was endangered."), *pet. denied*, 626 S.W.3d 909 (Tex. 2021).

In addition to Mother's drug issue, the testimony also showed issues of family violence. Maternal Aunt's counsel described Father as a seven-time convicted felon who committed assaults against Mother, and Mother neither denied this assertion nor sought to clarify this description. Mother admitted that Father was incarcerated for assault family violence. Although Father was ordered not to have contact with Ann, Mother allowed Father to have telephone contact with her. Mother also admitted having sporadic contact with Father and putting money on Father's books. Mother herself had been arrested for assault family violence, was out on bond, and was awaiting trial. Exposing a child to family violence endangers a child's physical or emotional well-being and is sufficient to support an endangerment finding. *See In re D.M.*, 452 S.W.3d 462, 470 (Tex. App.–San Antonio 2014, no pet.); *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.–Eastland 2010, pet. denied); *J.T.G.*, 121 S.W.3d at 125–26.

We hold that the evidence is legally and factually sufficient to show that Mother engaged in a course of conduct that endangered her children's physical or emotional well-being. *See J.F.C.,* 96 S.W.3d at 265–66 (stating that to be legally sufficient, the evidence must be such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations); *C.H.*, 89 S.W.3d at 25 (stating that to be factually sufficient, on the entire record, a factfinder must be able to

16

reasonably form a firm belief or conviction that the parent violated an alleged ground).

Because only one ground is necessary, and because we have held that the evidence is legally and factually sufficient under Subsection (E) grounds—one of the grounds that must be addressed when there are multiple grounds—we do not need to address the other four grounds. *See* Tex. R. App. P. 47.1; *N.G.*, 577 S.W.3d at 237; *D.D.E.*, 2021 WL 4598596, at *2–3; *A.B.-G.*, 2019 WL 3755770, at *7 n.5; *A.C.*, 577 S.W.3d at 698–99 & n.2.

## E. Best Interest

### 1. Law

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative both of grounds under Section 161.001(b)(1) and of best interest under Section 161.001(b)(2). *Id.* at 249; *C.H.*, 89 S.W.3d at 28. Nonexclusive factors that the factfinder in a termination case may also use in determining the child's best interest include:

- the child's desires;

- the child's emotional and physical needs now and in the future;

- the emotional and physical danger to the child now and in the future;

17

- the parental abilities of the individuals seeking custody;

- the programs available to assist these individuals to promote the child's best interest;

- the plans for the child by these individuals or by the agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions that may indicate that the existing parent–child relationship is not a proper one; and

- the parent's excuse, if any, for the acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors do not form an exhaustive list, and some factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may suffice in a particular case to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of paltry evidence relevant to each factor will not support such a finding. *Id.*; *In re J.B.*, No. 02-18-00034-CV, 2018 WL 3289612, at *4 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.).

## 2. Discussion

### a. Children's desires

At the time of trial in March 2021, Ann was four years old but would soon be five, and Beth was two years old but would soon be three. Both lacked sufficient

18

maturity to express an opinion regarding a parental preference, and neither testified at trial. *See M.S.*, No. 02-21-00007-CV, 2021 WL 2654143, at \*18 (Tex. App. —Fort Worth June 28, 2021, pet. denied); *In re M.H.*, 319 S.W.3d 137, 150 (Tex. App.—Waco 2010, no pet.); *see also* Tex. Fam. Code. Ann. § 153.134(a)(6) (providing that a child must be at least 12 years old before the child's preference, if any, regarding the person to have the exclusive right to designate the child's primary residence becomes a factor), § 156.101(a)(2) (same). This factor is neutral.

### b. Children's emotional and physical needs now and in the future

Ann's and Beth's emotional and physical needs now and in the future will be the same regardless of who raises them, but Maternal Aunt is in a better position to meet those needs now and in the future. Unlike Mother, Maternal Aunt does not face the possibility of relapsing, getting caught possessing illegal drugs, being incarcerated for assault, or reuniting with a physically abusive boyfriend. This factor weighs in favor of termination.

### c. Emotional and physical danger to the children now and in the future

A home with Mother would likely include drugs and family violence. This factor favors termination.

### d. Parental abilities of the individuals seeking custody

Maternal Aunt was already parenting Ann and Beth. Photographs of Mother with Ann and Beth show happy children, but a world of difference separates caring for children for a few hours and parenting children day in and day out. Because

19

Mother did not have a monitored return, how well she could parent Ann and Beth on a daily basis was unknown. This factor favors termination.

### e. Programs available to assist these individuals to promote the children's best interest

The parties did not develop evidence addressing any programs that might be available to help Mother or Maternal Aunt to raise Ann and Beth. Mother was actively participating in programs to help her deal with her addiction. Overall, though, this factor is neutral.

### f. Plans for the children by these individuals or by the agency seeking custody

Maternal Aunt had already been raising Beth since Beth's birth and had been raising Ann since Ann was about 10 months old. In contrast, Mother was living with her father and mother, and the Department had not approved a home study of Mother's father. Regardless, if Mother took possession of Ann and Beth, the record suggests that Mother would have to make different living arrangements, which would add another element of potential uncertainty.[6] This factor weighs in favor of termination.

---

[6]Although Maternal Aunt and the children had moved while the cases were pending, Maternal Aunt showed the ability to do so without jeopardizing the children's stability.

### g. Stability of the home or proposed placement

"[C]hildren need permanency and stability." *In re G.V., III*, 543 S.W.3d 342, 350 (Tex. App.—Fort Worth 2017, pet. denied). A child's need for permanence through the establishment of a stable, permanent home is a paramount consideration in the best-interest determination. *In re E.R.W.*, 528 S.W.3d 251, 267 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Mother has had more than three years to get clean and stay clean, and yet she relapsed in September 2020. This factor supports the trial court's finding that termination was in Ann's and Beth's best interest.

### h. Parent's acts or omissions that may indicate that the existing parent–child relationship is not a proper one

### and

### i. Parent's excuse, if any, for the acts or omissions

We address these last two factors together. Focusing on Mother at trial, her testimony was relatively straightforward. Despite a court order, she let the children talk to Father on the phone. And despite a court order, she went out of her way to let Paternal Grandparents see the children without Maternal Aunt's knowledge. Creating safety boundaries for the children is pointless if Mother affirmatively ignores them.

Regarding Mother's drug addiction, Mother's testimony was relatively straightforward there too. She was a drug addict, she was making efforts to address it, and she had made some progress. Because Mother relapsed in September 2020, though, her addiction remained an ongoing concern.

This factor weighs in favor of termination.

### j. Analysis and holding

Although Mother had made progress, she still had not arrived at the point that placing Ann and Beth with her would result in a reasonable expectation of permanence, stability, or safety. Drug use remained a problem. Mother maintained contact with Father, who used drugs with Mother and who was incarcerated for assault family violence. And Mother had her own legal difficulties with a pending criminal charge of assault family violence. Ann had been in legal limbo for the majority of her short life, and Beth had been in legal limbo all of her life. Termination was Ann's and Beth's path to permanence, stability, and safety. We hold that the evidence is legally and factually sufficient to show that terminating Mother's parental rights was in the best interest of Ann and Beth. *See J.F.C.*, 96 S.W.3d at 265–66 (stating that to be legally sufficient, the evidence must be such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations); *C.H.*, 89 S.W.3d at 25 (stating that to be factually sufficient, on the entire record, a factfinder must be able to reasonably form a firm belief or conviction that supports the finding).

We overrule Mother's second and third issues.

22

## IV.  CONCLUSION

Having overruled Mother's issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  November 10, 2021